UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:22-cv-2534-TDC |
| PRIME LOGISTICS, LLC, | * | |
| Defendant | * | |

## REPORT AND RECOMMENDATION

This is an action seeking payment of overdue premiums pursuant to a Workers' Compensation and Employers' Liability Insurance Policy ("the Policy"). Pending before the Court is Plaintiff Insurance Company of the West's ("ICW's") Motion for Default Judgment. ECF No. 14. For the reasons discussed below, the Motion shall be granted.

## BACKGROUND

According to Plaintiff's Complaint, Insurance Company of the West is a California-based corporation. ECF No. 1, at 1. On or about January 11, 2021, Plaintiff issued Defendant Prime Logistics, LLC, a Maryland-based corporation, "a Workers Compensation and Employers' Liability Insurance Policy, which was effective from January 11, 2021 to January 11, 2022. The Policy constitutes a binding and enforceable contract between ICW and Defendant." *Id.* at 1-2. According to the Complaint, Defendant failed to pay premiums due under the terms of the Policy. *Id.* at 2. According to Plaintiff, at the time of the filing of the Complaint, Defendant owed $376,932.72 in unpaid premiums. *Id.*

1

On October 4, 2022, Plaintiff brought an action seeking payment of these amounts, "plus pre-judgment and post-judgment interest, costs of suit and for such other and further relief as this Court deems just and equitable under the facts of this case." *Id.* at 3.  The Complaint included a single breach of contract count.  *Id.* at 2-3.  On October 18, 2022, a summons was issued as to Defendant.  ECF No. 8.  On December 12, 2022, Plaintiff returned the summons as executed on Defendant.  ECF No. 9.  There was no further action in the case for approximately two months.

On February 16, 2023, Plaintiff moved for a Clerk's Entry of Default, arguing that "Prime Logistics' initial responsive pleading was due on or before December 6, 2022.  To date, Prime Logistics' has failed to plead in accordance with this Court's Summons and is in default."  ECF No. 10, at 1.  On March 6, 2023, the Clerk of the Court entered an Order of Default against Defendant.  ECF No. 11.  Two additional months passed.

On May 3, 2023, Plaintiff moved for an entry of default judgement against Defendant. ECF No. 14.  As of May 2, 2023, Plaintiff sought judgment against Defendant in the amount of $406,736.22.  *Id.* at 1.  In support, Plaintiff attached the affidavit of Kathleen Daniels, Plaintiff's Senior Audit Specialist.  ECF No. 14-1.

Ms. Daniels's affidavit provides additional background and details regarding the Policy and the relationship between the parties.  *Id.*  According to Ms. Daniels, the Policy "is what is known as a 'pay as you go' policy whereby the policyholder is required to report actual payroll and remit premium on a monthly basis throughout the Effective Period."  ECF No. 14-1, at 3. Although the Policy includes a total estimated amount of premiums and fees, "the premium shown on the Policy Information Page is an estimate, and final premium will be determined after the policy period ends by using the actual, and not estimated, payroll for the Effective Period."  *Id.* On September 2, 2021, ICW issued a notice of cancellation for non-payment of the premium for

2

the months of June 2021 and July 2021.  *Id.*  The policy was, in effect, cancelled on September 23, 2021.  *Id.*

Plaintiff then made multiple subsequent attempts to contact Prime Logistics: "[r]equests for payroll records were sent to Prime Logistics on October 7, 2021, October 19, 2021, October 28, 2021, November 10, 2021, November 29, 2021 and December 9, 2021.  Prime Logistics was notified on December 9, 2011 that failure to provide the requested records would result in the assessment of an audit non-compliance charge[.]"  *Id.*  After no response was received, Plaintiff conducted its audit based on the information it had.  "The final audit invoice billed estimated premium of $134,773.00 plus an audit non-compliance charge of $269,546.00, for a total of $404,319.00."  *Id.*; *see also id.* at 28 (authorizing a "Maximum Audit Noncompliance charge multiplier" of "up to two times" the amount owed); *id.* at 31 (calculating the premium subtotal of $134,773).  According to Ms. Daniels, the "difference between Prime Logistics' final audit premium and charges and the amount previously paid by Prime Logistics for the Effective Period is $376,932.72."  *Id.* at 3.  However, in addition, Plaintiff sought "$29,803.50 in accrued prejudgment interest at the legal rate of six percent (6%) per annum," resulting in the previously stated total of $406,736.22.  *Id.* at 4; *id.* at 33 (calculating the applicable amount of interest).

On May 10, 2023, the Case was referred to my Chambers for the limited purpose of a Report and Recommendation on the pending Request for Entry of Default Judgment.  ECF No. 15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear.  Fed. R.

3

Civ. P. 55(b)(1). The entry of default judgment is a matter within the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421). Default judgment is proper when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896-97 (4th Cir. 1987) (upholding a default judgment award where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations

4

within the complaint are "well-pleaded." *See, e.g., Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972 at \*2-\*3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832 at \*2-\*3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pled and, consistent with the Court's discretion to grant default judgment, relief based on those allegations should be denied. *See, e.g., Balt. Line Handling Co.*, 771 F. Supp. 2d at 544-45 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

## ANALYSIS

To prove a claim for breach of contract, a plaintiff must establish the existence of a contractual obligation, a material breach of that contractual obligation, and resulting damages. *See Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011).

Plaintiff has sufficiently established each of these elements. Part Five of the Policy provides that all premiums for the Policy "will be determined by our manuals of rules, rates, rating plans and classifications." ECF No. 14-1, at 17. Additionally, the same part states that Defendant "will pay all premiums when due." *Id.* Finally, the Policy provides that Defendant will let Plaintiff "examine and audit all [Defendant's] records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data." *Id.* Plaintiff's Complaint pleads and Ms. Daniels's affidavit establishes that Defendant failed to make payments in accordance with the required provisions of the Policy, thereby materially breaching it.

If the complaint alleges facts sufficient for the Court to find liability, then the Court turns to damages. *Walsh v. Yost*, No. 8:20-cv-00449-PX, 2022 WL 9362277, at *2 (D. Md. Oct. 14, 2022). Damages are limited to what is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing, by affidavit, or by other records. *See also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794-95 (D. Md. 2010). Plaintiffs may recover: (1) delinquent contributions; (2) any interest on the delinquent contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the [delinquent] contributions, or . . . (ii) liquidated damages provided for under the plan not in excess of 20 percent" of the delinquent contributions; (4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). "[W]hile the Court may hold a hearing to prove damages, it is not required to do so. It may instead rely on 'detailed affidavits or documentary evidence to determine the appropriate sum.'" *Trustees of Nat'l Elec. Benefit Fund v. All Nu Elec. Contracting Corp.*, No. GJH-22-0544, 2023 WL 1416553, at *2 (D. Md. Jan. 31, 2023) (citing *Adkins v. Tesco*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).

The supporting documentation establishes the amount due pursuant to the Policy: pursuant to the affidavit, as well as the results of the audit, Defendant owed in total $404,319. ECF No. 14-1, at 3, 31. This amount substantially exceeded the initial amount of costs Defendant was estimated to incur, due to the penalty associated with its failure to comply with the audit. *See id.* at 28 (authorizing the penalty associated with non-compliance with the audit); *id.* at 31 (listing the amount charged for non-compliance with the audit). Because Defendant had previously paid $27,386.28, it's remaining balance, per the audit, is $376,932.72. *Id.* at 31. As Plaintiff correctly

6

calculated, a six percent (6%) per annum interest rate on this amount between the date of the completion of the audit and the date of the filing of the pending Motion is $29,803.50, *id.* at 33, resulting in the requested total amount due of $406,736.22. *Id.* at 4.

Separately, Plaintiff's Motion also requests costs associated with the case. ECF No. 14, at 2. Although costs are available as part of a request for default judgment, at the present time, the Court has no evidence regarding the amount of or basis for these costs. Accordingly, the Court will not grant them presently; however, if Plaintiff later provides additional documentation, the Court may further address this matter.

## CONCLUSION

For the aforementioned reasons, it is recommended that Plaintiff's Motion for Default Judgment be granted in the amount of $406,736.22.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

Date: June 27, 2023                                    _____/s/_____
                                                      Ajmel A. Quereshi
                                                      U.S. Magistrate Judge